IN THE CIRCUIT COURT OF THE
ELEVENTH JUDICIAL CIRCUIT IN
AND FOR MIAMI-DADE, FLORIDA

DESSIRE BEVILACQUA,            CASE NO.: _____

    Plaintiff,

v.

SUIT SUPPLY MIAMI BEACH, INC.,

    Defendants.

_____/

## COMPLAINT

Plaintiff DESSIRE BEVILACQUA ("**Plaintiff**") sues Defendant SUIT SUPPLY MIAMI BEACH, INC. ("**Defendant**"), and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. This action seeks damages in excess of $30,000.00, independent of attorney's fees, costs, and interest, based on violations of the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01 *et seq.*, as amended ("**FCRA**"), and for assault and battery.

2. Plaintiff is an individual female and resident of Broward County, Florida, and former employee of Defendant.

3. Defendant is a foreign corporation with its principal place of business in New York, New York, and is subject to the jurisdiction of this Court.

4. Defendant employed no fewer than 15 or more persons at all relevant times, and is therefore an employer as defined by the FCRA and Title VII.

5. At all relevant times, Plaintiff was employed by Defendant and performed work for Defendant in Miami-Dade County, Florida.

1

6. Pursuant to Section 47.011, Florida Statues, venue is proper in this Court because the causes of action alleged against Defendants herein occurred in Miami-Dade County, Florida.

7. This Court has jurisdiction over this matter pursuant to Fla. Stat. §§ 26.012, 34.01 and 760.11.

## ADMINISTRATIVE PREREQUISITES

8. Plaintiff has complied with all statutory prerequisites to file this action.

9. Plaintiff timely dual-filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("**EEOC**") and the Florida Commission on Human Relations ("**FCHR**") on or about July 19, 2019 alleging sexual harassment and retaliation.

10. On or about September 23, 2020, Plaintiff received the EEOC's Notice of Right to Sue letter in reference to her EEOC Charge.

11. More than 180 days have expired since Plaintiff filed her charge of discrimination with the FCHR, and the FCHR has neither conciliated nor issued a determination of whether there is reasonable cause

12. Plaintiff has filed this Complaint within ninety (90) days of the issuance of the EEOC's Notice of Right to Sue letter.

## GENERAL ALLEGATIONS

13. Plaintiff is a woman of Haitian national origin.

14. Defendant is a retailer of men's and women's clothing.

15. In or around February 2018, Defendant hired Plaintiff as a Sales Associate to work at its Miami Brickell location.

16. Robert Hammond ("**Hammond**") is an individual man, and at all relevant times was employed by Defendant as a Supervisor and was and of "key holder" for Defendant's Miami

2

location. Hammond held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.

17. Suzy Harding ("**Harding**") is an individual woman, and at all relevant times was employed by Defendant as an Assistant Manager for Defendant's Miami Beach location. Harding held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.

18. Pearse Lumb ("**Lumb**") is an individual man, and at all relevant times was employed by Defendant as a Store Manager for Defendant's Miami Beach location. Lumb held direct supervisory authority over Plaintiff, controlling various terms and conditions of Plaintiff's employment.

19. In or around January of 2019, Defendant transferred Plaintiff to its Miami Beach location.

20. Shortly thereafter , Hammond was transferred to the Miami Beach location and was one of Plaintiff's supervisors.

21. As set forth and described herein, during her employment with Defendant, Plaintiff was sexually harassed by Hammond.

22. On one occasion, in or around February 2018, both Hammond and Plaintiff were engaged in a casual and platonic conversation when suddenly, without any enticement by Plaintiff, and in a very explicitly aggressive and sexual manner, Hammond whispered to Plaintiff "**I'VE GOT SOMETHING TO SHOW YOU**" (referring to his penis). Hammond then suddenly grabbed his erect penis through his pants, indicating his desire to engage in sexual activity. Plaintiff was shocked and distraught over Hammond's inappropriate behavior, and quickly exited the room.

23. Plaintiff felt very uncomfortable and was embarrassed and humiliated by Hammond's unwelcome and inappropriate behavior, and she immediately complained about Hammond's sexual harassment to Harding, the Assistant Managers for Defendant's Miami Beach location and a direct supervisor of Plaintiff. Plaintiff explained to Harding what had happened, and then both Harding and Plaintiff together reviewed the store's surveillance camera which captured the incident. Harding admitted that Hammond's behavior was wrong, but Plaintiff did not escalate the incident to Defendant's Human Resources Department ("**HR Department**") because she did not want to make trouble.

24. Subsequently, in or about April of 2019, Hammond again sexually harassed Plaintiff. In particular, on this occasion, while Plaintiff was assisting a client, Hammond asked Plaintiff if she had left some clothing items out of place in the store. Plaintiff then explained to Hammond that the items were hers and that she would pick them up after she finished with her client. Hammond then responded with "**YOU BETTER HURRY UP OR I AM GOING TO TAKE YOU TO THE BACK AND SPANK YOU.**" Again, Plaintiff felt embarrassed and humiliated by Hammond's sexual comment and the situation he created.

25. Hammond's inappropriate behavior did not stop, and he continued to make sexually aggressive comments towards Plaintiff. Approximately a week later (after the "spanking" comment), Plaintiff was walking by Hammond when Hammond suddenly stated to her "**YOU LOOK SO SEXY IN THE BRA YOU'RE WEARING**" suggesting that he was aroused by looking at her breasts.

26. Plaintiff could no longer withstand the constant sexual harassment from Hammond and so she immediately reported Hammond's inappropriate conduct to Lumb, the Store Manager for Defendant's Miami Beach location and direct supervisor of Plaintiff. In particular, Plaintiff

4

told Lumb about what had just occurred and about Hammond's prior incidents of inappropriate sexual comments, and that she had also previously complained to Harding about Hammond's conduct. She further told Lumb that she did not feel comfortable working with Hammond, and requested something be immediately done about the situation. Lumb acknowledged that Hammond's behavior was inappropriate, and assured Plaintiff that he would report the incident to Defendant's HR Department.

27. Shortly thereafter, upon information and belief a day or two fter Plaintiff reported the incident to Lumb, Lee Wilsom ("**Wilsom**"), Defendant's Human Resource Representative, contacted Plaintiff to discuss her complaint. Plaintiff reiterated her complaints about the sexual harassment that she experienced from Hammond and made it clear that she wanted to proceed with an investigation. Wilsom also admitted that Hammond's conduct was inappropriate, and assured Plaintiff that Defendant would investigate her complaint. Despite those assurances, Defendant's HR Department did not follow-up with Plaintiff or inform her about any results of an investigation. Upon information and belief, Defendant did not fully investigate Plaintiff's complaints and took no corrective action against Hammond, and Hammond remained employed as a Supervisor at the Company.

28. Shortly after Plaintiff complained about and reported Hammond's sexual harassment to Defendant's HR Department, Lumb and Defendant began to retaliate against Plaintiff for exercising her rights.

29. In particular, Lumb drastically reduced Plaintiff's work hours from approximately 32 hours per week, to initially 16 hours per week, and then eventually to 8 or less hours per week. Upon information and belief, Lumb did not similarly reduce the work hours of Plaintiff's co-workers, including Hammond. Plaintiff complained to Harding about her reduction in hours, and

5

eventually also complained to Defendant's HR Department. Lumb subsequently told Plainitff that her hours were cut because the store business was slow. However, around that same time, despite the excuse given for reducing Plaintiff's hours, Defendant hired a new sales employee.

30. Subsequently, in or around late-November 2019, Plaintiff was forced to quit her employment with Defendant due to the humiliating sexual harassment she experienced from Hammond, Defendant's lack of responsiveness to her complaints and the retaliation she endured (the drastic cut in hours) for complaining about Hammond's sexual harassment.

31. At all relevant times, Plaintiff was an exemplary employee who had never been disciplined or written up for her work performance during her employment with Defendant.

32. At all relevant times, Plaintiff was and continues to be qualified for the position she formerly held with Defendant.

33. Plaintiff claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

34. Defendant's unlawful actions and conduct were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiff's rights.

35. At all relevant times, Defendant's employees, including Hammond, were acting as agents of Defendant in their unlawful treatment of Plaintiff.

36. As a result of Defendant's unlawful acts and conduct, Plaintiff felt extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

37. As a result of Defendants' unlawful acts and conduct complained of herein, Plaintiff suffered and continues to suffer damages.

6

## COUNT I – SEXUAL HARASSMENT
## (HOSTILE WORK ENVIRONMENT AND *QUID PRO QUO*)
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

38. Plaintiff re-alleges the allegations of paragraphs 1 through 37 above.

39. The FCRA prohibits employment discrimination based on sex and prohibits harassment based on these protected characteristics.

40. Hammond's unwanted sexual advances as described and set forth above created a hostile work environment in violation of the FCRA.

41. Moreover, and/or alternatively, Defendant subjected Plaintiff to *quid pro quo* sexual harassment when Hammond made unwanted sexual advances as described and set forth above. Plaintiff refused to acquiesce to Hammond's sexual overtures and was subsequently retaliated against after complaining to Defendant.

42. As a result of Defendant's intentional discriminatory conduct in violation of the FCRA, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

43. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under the FCRA. Accordingly, Plaintiff also requests punitive damages as authorized by the FCRA.

44. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, compensatory damages, emotional distress damages, and punitive damages, plus interest, attorney's fees and costs, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of the FCRA.

## COUNT II – RETALIATION
## VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT
## [CONSTRUCTIVE DISCHARGE]

45. Plaintiff re-alleges the allegations of paragraphs 1 through 37 above.

46. The FCRA prohibits retaliation against an employee for opposing conduct which would violate the terms of the FCRA.

47. Plaintiff opposed sexual harassment which is prohibited by the FCRA when she complained to Defendant about sexual harassment that she was subjected to as described above.

48. Plaintiff's complaints of sexual harassment, therefore, constituted protected activity under the FCRA.

49. Shortly, after expressing her opposition to the unlawful discrimination, Plaintiff was retaliated against by Defendant by having her hours drastically reduced as described and set forth above.

50. The retaliation by Defendant were the result of Plaintiff's opposition to the discriminatory conduct to which she was subjected, in violation of the FCRA.

51. Despite complaints to Defendant and store management about Hammond's inappropriate behavior and Lumb's retaliation against her for complaining about sexual harassment, Defendant failed to take timely appropriate corrective action.

8

52. In addition to the sexual harassment by Hammond, the retaliation Plaintiff endured for complaining about Hammond's inappropriate sexual harassment further created intolerable working conditions such that Plaintiff felt compelled to quit her job with Defendant.

53. The retaliation and Plaintiff's ultimate resignation were the result of Plaintiff's opposition to the discriminatory conduct to which she was subjected, in violation of the FCRA.

54. As a result of Respondent's intentional, willful and unlawful retaliatory actions, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

55. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under the FCRA. Accordingly, Plaintiff also requests punitive damages as authorized by the FCRA.

56. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, compensatory damages, emotional distress damages, and punitive damages, plus interest, attorney's fees and costs, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of the FCRA.

### COUNT III – SEXUAL HARASSMENT
### (HOSTILE WORK ENVIRONMENT AND *QUID PRO QUO*)
### VIOLATION OF TITLE VII

57. Plaintiff re-alleges the allegations of paragraphs 1 through 37 above.

9

58. Title VII prohibits employment discrimination based on sex and prohibits harassment based on these protected characteristics.

59. Hammond's unwanted sexual advances as described and set forth above created a hostile work environment in violation of Title VII.

60. Moreover, and/or alternatively, Defendant subjected Plaintiff to *quid pro quo* sexual harassment when Hammond made unwanted sexual advances as described and set forth above. Plaintiff refused to acquiesce to Hammond's sexual overtures and was subsequently retaliated against after complaining to Defendant.

61. As a result of Defendant's intentional discriminatory conduct in violation of Title VII, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

62. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under Title VII. Accordingly, Plaintiff also requests punitive damages as authorized by Title VII.

63. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, compensatory damages, emotional distress damages, and punitive

damages, plus interest, attorney's fees and costs, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of Title VII.

**COUNT IV – RETALIATION
VIOLATION OF TITLE VII
[CONSTRUCTIVE DISCHARGE]**

64. Plaintiff re-alleges the allegations of paragraphs 1 through 37 above.

65. Title VII prohibits retaliation against an employee for opposing conduct which would violate the terms of Title VII.

66. Plaintiff opposed sexual harassment which is prohibited by Title VII when she complained to Defendant about sexual harassment that she was subjected to as described above.

67. Plaintiff's complaints of sexual harassment, therefore, constituted protected activity under Title VII.

68. Shortly, after expressing her opposition to the unlawful discrimination, Plaintiff was retaliated against by Defendant by having her hours drastically reduced as described and set forth above.

69. The retaliation by Defendant were the result of Plaintiff's opposition to the discriminatory conduct to which she was subjected, in violation of Title VII.

70. Despite complaints to Defendant and store management about Hammond's inappropriate behavior and Lumb's retaliation against her for complaining about sexual harassment, Defendant failed to take timely appropriate corrective action.

71. In addition to the sexual harassment by Hammond, the retaliation Plaintiff endured for complaining about Hammond's inappropriate sexual harassment further created intolerable working conditions such that Plaintiff felt compelled to quit her job with Defendant.

72. The retaliation and Plaintiff's ultimate resignation were the result of Plaintiff's opposition to the discriminatory conduct to which she was subjected, in violation of Title VII.

73. As a result of Respondent's intentional, willful and unlawful retaliatory actions, Plaintiff has suffered and will continue to suffer financial and economic damages in the form of lost wages (front and back pay) and lost benefits. Plaintiff has also suffered and will continue to suffer emotional distress, mental anguish, loss of dignity, and other intangible damages. Plaintiff accordingly demands lost economic damages, lost wages, back pay, interest, front pay, the value and/or economic impact of lost benefits, and compensatory damages.

74. Defendant's actions were knowing, intentional, willful, malicious, and in reckless disregard of Plaintiffs rights under Title VII. Accordingly, Plaintiff also requests punitive damages as authorized by Title VII.

75. Plaintiff further requests that her attorney's fees and costs be awarded as permitted by law.

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment against Defendant for all damages suffered by Plaintiff, including economic damages, lost wages (back pay and front pay) and benefits, compensatory damages, emotional distress damages, and punitive damages, plus interest, attorney's fees and costs, and any other remedies (monetary and/or equitable) allowable by law as a result of Defendant's conduct in violation of Title VII.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable before a jury.

Dated:  December 18, 2020									**DEREK SMITH LAW GROUP, PLLC**
701 Brickell Ave, Suite 1310
Miami, FL 33131
Tel: (305) 946-1884
Fax: (305) 503-6741

_____
Caroline H. Miller

*Counsel for Plaintiff Dessire Bevilacqua*

13